IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RICHARD R. RANDALL,                          07-CV-37-BR

        Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Road Suite 235
Portland, Oregon 97223
(503) 245-6309

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158

1   -   OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2212

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Richard R. Randall seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Randall's application for Disability Insurance Benefits (DIB) and found Randall ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


### ADMINISTRATIVE HISTORY

    Randall filed applications for SSI and DIB on March 20,

2   -   OPINION AND ORDER

2003.  Tr. 102, 295.[1]  The applications were denied initially and

on reconsideration.  Tr. 27-30, 34-36.  An Administrative Law

Judge (ALJ) held a hearing on December 20, 2005.  Tr. 312-70.

Randall was represented by an attorney.  Tr. 308.  At the

hearing, the ALJ took testimony from Randall; lay witnesses Nancy

Randall, Russell Randall, and Robert McLatchey; a medical expert

(ME), psychologist John Crossen; and a vocational expert (VE).

Tr. 312-70.  The ALJ issued a decision on February 24, 2006, in

which he found Randall is not disabled and, therefore, is not

entitled to benefits.  Tr. 19-24.

The Appeals Council denied Randall's request for review,

and, therefore, the ALJ's opinion became the final decision of

the Commissioner on December 21, 2006.  Tr. 4-6.


## BACKGROUND

Randall was 34 years old at the time of the second hearing

before the ALJ.  Tr. 365.  Randall completed tenth grade, but he

did not graduate from high school.  Tr. 116.  He received a

certification in operating light-industrial equipment and has

worked as a carnival employee, a welding-shop apprentice, and a

gas-station attendant.  Tr. 116, 125-32, 184.

In 1994 Randall sustained multiple gunshot wounds to the

---

[1] Citations to the official transcript of record filed by
the Commissioner on May 17, 2007, are referred to as "Tr."

3  -  OPINION AND ORDER

abdomen in a suicide attempt.  Tr. 206-09, 223.  After multiple surgeries and several months in the hospital, Randall recovered from his injuries, but doctors elected to leave two .22-caliber bullets lodged in his abdomen near his spine.  Tr. 206-09, 223. The surgeons also removed large sections of Randall's large and small intestine.  Tr. 330.

In early February 2003, Randall fell on his back from a scooter while playing with his son.  Tr. 223, 235-38.  After his fall, Randall suffered increasingly severe pain in his back, numbness in the tops of his thighs, and tightness in his calves. Tr. 223-23.  Subsequent MRIs revealed extensive lower-back impairments including nerve-root impingement by one of the remaining bullets at L1-L2 and degenerative disc disease at L4-S1 with "eccentric disc bulge [that] may impinge upon existing nerve of right L4-5."  Tr. 235-38, 259.  In June 2003, Randall had surgery to remove the bullet, to correct his bulging discs, and to fuse his spine at L4-5 (bilateral laminectomies, mesial facetectomies, foraminotomies, and discectomies at L4-5; bilateral Ray cage fusion at L4-5; and bilateral transverse process fusion at L4-5).  Tr. 250-51.  Randall stopped working in early February and alleges a disability onset date of February 11, 2003.  Tr. 121.

Randall also had an MRI on his right knee in February 2003, which revealed joint effusion, medial meniscus tear and absence

of a large portion of meniscus, degenerative changes, and a loss
of cartilage.  Tr. 244.

From February 27, 2003, to "at least" December 31, 2003,
Randall's physicians instructed him not to work due to his lower-
back impairments.  Tr. 222, 234, 267.  Sarah Lampton, M.D., noted
Randall should be restricted from working "until this is
resolved."  Tr. 222.

Randall also has been diagnosed with Major Depressive
Disorder and a developmental reading disorder.  Tr. 210-20.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The

Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Randall has not engaged in substantial gainful activity since his alleged onset date of February 11, 2003.  Tr. 20.

At Step Two, the ALJ found Randall's degenerative disc disease of the lumbar spine, degenerative joint disease in his knee, and the impairments resulting from his lumbar surgeries are severe impairments.  Tr. 21.  He found Randall's mental impairments are not severe.  Tr. 21.

At Step Three, the ALJ found Randall's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ then assessed Randall's RFC and found he is able to lift and to carry 20 pounds occasionally and 10 pounds frequently; to stand or to walk for fifteen minutes at a time for two hours of an eight-hour work day; to sit without limitation; to kneel, stoop, crouch, and crawl occasionally; and to climb ropes, ladders, or scaffolding occasionally.  Tr. 23.

Based on Randall's RFC and the testimony of the VE, the ALJ found at Step Four that Randall cannot return to his past relevant work.  Tr. 24.  Accordingly, the ALJ proceeded to Step Five.

At Step Five, the ALJ found Randall is capable of "performing substantial gainful activity in jobs that exist in significant numbers in the national economy" including small product assembler, inspector/hand packager, and bench worker. Tr. 23-24.  Accordingly, the ALJ found Randall is not disabled, and therefore, is not entitled to benefits.  Tr. 23-24.

## DISCUSSION

Randall contends the ALJ erred (1) by finding Randall's testimony regarding his impairments not credible "to the extent he is completely disabled by them"; (2) by improperly rejecting the testimony of lay witnesses Nancy Randall, Russell Randall, and Robert McLatchey; (3) by improperly assessing Randall's RFC, which led the ALJ to pose an incomplete hypothetical to the VE; and (4) by finding Randall is capable of performing semi-skilled work in jobs that exist in significant numbers in the national economy without describing the existing skills Randall can transfer to semi-skilled work.

I.    **Lay Testimony.**

    A.    **Richard R. Randall.**

Randall challenges the ALJ's finding that Randall's testimony regarding his inability to work is not credible.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony: He must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407. The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

When the ALJ improperly rejects the claimant's testimony, the reviewing court credits the claimant's testimony as a matter of law if the ALJ would be required to find the claimant disabled on the basis of his credited testimony. *Id.*

**1. Randall's Testimony.**

Randall testified he suffers from stiffness, soreness, and sharp pain in his back in addition to numbness and radiating pain in his legs. Tr. 316-21. Randall also testified the pain in his back and legs limits his ability to walk even two city blocks. Tr. 317-18. In addition, Randall reported severe, recurrent abdominal cramping resulting from the loss of segments of his large and small intestine, which causes him to spend one-and-a-half hours per day in the bathroom. Tr. 318, 330. Randall testified he can stand for four hours at most and can sit for only two hours in an eight-hour work day. Tr. 335. He also stated he cannot stoop, crouch, or bend at the waist. Tr. 334-36. Randall described similar pain and functional limitations in his pain questionnaire and stated he requires assistance to do most daily activities such as getting out of bed and showering. Tr. 152-58.

Randall also testified he suffers from headaches, depression, and anxiety, which hinder his ability to concentrate and require him to rest in quiet seclusion for a few hours several times a week. Tr. 319-25. As a result of his

impairments, Randall testified he missed an average of one to two days of work per week at his past jobs.  Tr. 327.

As noted, Randall provided MRIs detailing the extent of the degeneration of the discs in his lumbar spine and in his knee.  Tr. 235-44, 252-53.  In February 2003, Dr. Lampton, one of Randall's treating physicians, concluded Randall was "certainly having some symptoms indicative of an L2 level nerve problem." Tr. 224.  In April 2003, John C. Misko, M.D., the treating physician who performed back surgery on Randall in June 2003, noted in his review of Randall's MRIs that he and a colleague "were amazed" at the extent of Randall's lower-back impairments. Tr. 233.  Accordingly, the Court finds Randall has satisfied the first two prongs of the *Cotton* test by providing evidence of impairments that could reasonably cause him some degree of the pain, stiffness, and numbness that he alleges.  *See Cotton,* 799 F.2d at 1407.

**2.  ALJ's Decision.**

The ALJ determined the medical evidence in the record establishes that Randall's degenerative disc disease, the resulting impairments from his lower-back surgeries, and the degenerative joint disease in his right knee are severe impairments.  Tr. 21.  As noted, however, the ALJ found Randall's alleged symptoms testimony not credible insofar as Randall alleges he is completely unable to work.  Tr. 22.  Because the

13  -  OPINION AND ORDER

ALJ did not determine Randall is malingering, the ALJ must provide clear and convincing reasons for rejecting Randall's subjective pain testimony. *Lester*, 81 F.3d at 834.

The ALJ discredited Randall's testimony in part because the record did not contain any medical evidence regarding Randall's treatment since June 2003. Tr. 22. The ALJ, however, did not provide any reason why this would discredit Randall's testimony concerning the pain he suffers and the resulting limitations on his daily activities. Randall testified he could not afford health insurance after he lost coverage under the Oregon Health Plan. Tr. 340. Randall also stated in a Claimant Questionnaire to the SSA that he did not have insurance and was unable to obtain treatment or prescription medication, so he used only over-the-counter pain relievers. Tr. 178. If a claimant cannot afford treatment, his failure to obtain medical treatment cannot be a basis for discrediting his testimony. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). *See also Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986). Moreover, Randall need not provide objective evidence of his subjective symptoms as long as he satisfies the *Cotton* test. *See Cotton*, 799 F.2d at 1407 ("[I]t is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

In any event, the ALJ has a duty to assist in

developing the record when it is insufficient or ambiguous, and the ALJ has the authority to order consultative examinations if they are necessary to supplement the record. *Reed*, 270 F.3d at 841-42. The ALJ here ordered a consultative psychological examination, but he did not order a physical examination. Tr. 285-90, 308-11.

The ALJ also discredited Randall's testimony on the ground that Randall's criminal activities were inconsistent with his stated physical limitations. Tr. 22. Joe Wood, Psy.D., who evaluated Randall's mental and psychological impairments, reported Randall "said that his record is about 15 pages long and includes convictions for assaults, drugs, weapons, and theft." Tr. 22, 287. Nothing in the record, however, indicates Dr. Wood or the ALJ examined Randall's criminal records, and the criminal records are not a part of this record. It is unclear whether Randall's criminal activity actually undermines his stated physical limitations because the Court does not know when the crimes occurred or exactly what they were. Thus, this ground for discrediting Randall's testimony regarding his functional limitations does not constitute a clear and convincing reason for rejecting Randall's testimony without any support in the record.

The ALJ also discredits Randall's testimony on the ground that Dr. Wood "noted the claimant's tendency to exaggerate his symptoms." Tr. 22. Dr. Wood only examined Randall once, and

he merely indicates in his notes that Randall "seemed to overstate his level of depression based on his interaction in the evaluation. . . . [T]he claimant may have been presenting in a dramatic manner." Tr. 289. Dr. Wood's notes were made while assessing Randall's alleged depression and alleged panic attacks at the request of the ALJ in light of the lack of medical evidence in the record that Randall suffers from a panic disorder. Tr. 289. Dr. Wood appears to have reviewed Randall's psychological records and noted his history of major depressive disorder. Tr. 285-86. Even if Randall exaggerated his depression and panic disorder symptoms, the ALJ did not explain how Dr. Wood's note that Randall may have overstated his depressive symptoms discredits Randall's testimony regarding his pain and physical limitations as a result of his back and knee impairments. As noted, the ALJ must indicate the specific testimony that he finds not credible and must identify the evidence in the record that undermines that particular testimony. Instead the ALJ used Dr. Wood's reservations about Randall's presentation of his panic symptoms to discredit all of Randall's testimony, including statements about his physical and other mental limitations, on the basis that Randall has a "tendency to exaggerate." Tr. 22.

Thus, on this record, the Court concludes the ALJ erred because he did not provide clear and convincing reasons supported

by the record for rejecting Randall's testimony regarding his functional limitations that result from his physical impairments.

**B.  Nancy Randall, Russell Randall, and Robert McLatchey.**

Randall challenges the ALJ's conclusion that the testimony of lay witnesses Nancy Randall, Russell Randall, and Robert McLatchey is of little value in the assessment of Randall's RFC. Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

**1.  Nancy Randall.**

At the hearing before the ALJ, Nancy Randall, Randall's mother, testified she lives with Randall and provides for his care.  Tr. 341.  Nancy Randall also attested to Randall's persistent, severe back pain; to his ability to walk only "about two city blocks" before needing to stop and rest; to the exhaustion and pain that Randall suffers after only 20 to 30 minutes of basic daily activities such as cooking; and to Randall's repeated panic attacks that cause him to be angry, irritable, and reclusive.  Tr. 341-46.

**2.  Russell Randall.**

At the hearing before the ALJ, Russell Randall, Randall's brother, testified he has seen Randall almost every day

17  -  OPINION AND ORDER

since February 2003.  Tr. 346.  Russell Randall also attested to
Randall's ability to walk only a block-and-a-half or two without
rest; to Randall's difficulty in gripping such things as cups,
utensils, and wrenches; to Randall's persistent back pain and
fatigue, which cause Randall to be angry and irritable; and to
Randall's limited ability to perform for only 20 minutes daily
activities that he was once capable of doing such as folding
laundry, working in the yard, or working on cars.  Tr. 346-50.

### 3.    Robert McLatchey.

At the hearing before the ALJ, Robert McLatchey,
Randall's friend, testified he had known Randall for two years
and had seen him about five days a week for the preceding year-
and-a-half.  Tr. 352.  McLatchey also attested to Randall's
limited mobility illustrated by Randall's numbness in his legs,
noticeable limp, problems with standing up from a sitting or
lying-down position, and ability to walk only two to three blocks
without resting; to the assistance he requires with daily
activities such as cooking; to his persistent pain and fatigue;
and to his periodic panic and withdrawal for hours at a time.
Tr. 352-55.

### 4.    ALJ's Decision.

Although the ALJ "found the lay-witnesses' statements
and testimony credible to the extent that these individuals are
simply reporting their observations of the claimant's behavior,"

he appears to have rejected their testimony on the common grounds that (1) none of the lay witnesses is a medical or vocational expert; (2) the lay-witnesses' testimony is "not fully supported by the record"; and (3) the lay-witnesses' testimony is contradicted by Randall's criminal history, his tendency to exaggerate, and his abuse of drugs and alcohol.  Tr. 23.  The ALJ did not expressly reject or assign a particular weight to the lay-witnesses' testimony.  Tr. 22-23.

        To reject lay-witness testimony, an ALJ must "expressly" disregard the testimony on the basis of reasons "germane to each witness."  *Lewis*, 236 F.3d at 511.  The ALJ concluded the lay-witnesses' testimony was credible, but, nevertheless, he appeared to discredit their testimony on the whole.  Tr. 23.  In other words, instead of evaluating the lay-witness testimony separately or providing reasons germane to each witness for disregarding their testimony as required by *Lewis*, the ALJ discredited the testimony of the lay witnesses on general grounds such as the witnesses' lack of medical expertise.  Tr. 23.  Although lay testimony does not carry the weight of medical testimony, it is still competent evidence that the ALJ must take into account.  *Lewis*, 236 F.3d at 511.  Thus, the ALJ erred because he did not provide legally sufficient reasons germane to each witness for disregarding their testimony.

        The ALJ also found the testimony of the lay witnesses

19  -  OPINION AND ORDER

is not supported by medical evidence in the record.  The opinions of Randall's treating physicians, Drs. Lampton and Misko, however, clearly support the lay-witness testimony.  As noted, in 2003 Drs. Lampton and Misko found Randall had extensive impairments of his lower back requiring major surgery.  Tr. 222-59.  In addition, Dr. Lampton recommended in February 2003 that Randall not work for an indefinite period until his back problems were resolved, and Dr. Misko recommended Randall not work at least until December 31, 2003.  Tr. 222-23, 234.  The ALJ, however, did not address in his decision the opinions or recommendations of Drs. Lampton and Misko nor did he identify any medical evidence in the record that contradicted their opinions.

In addition, the statements of Randall's girlfriend, Jennifer Hadley, in her written third-party daily activities report, are also consistent with the testimony of the lay witnesses.  Tr. 133-44.  Hadley stated she lived with Randall and his mother and helped care for Randall.  Tr. 133.  Hadley described Randall's daily activities as quite limited:  He rarely leaves home, cannot drive, cannot sit or stand for long periods, has trouble walking distances greater than a quarter of a mile, and is physically unable to perform most daily household chores. Tr. 134-40.  The ALJ, however, did not address Hadley's statements.

The ALJ also asserted the testimony of the ME

20  -  OPINION AND ORDER

contradicted the testimony of the lay witnesses, but he failed to identify the contradictory testimony.  Tr. 23.  Moreover, the ME was a psychologist who only addressed the issue of Randall's psychological impairments and who testified he was "not able to determine" the degree of Randall's functional or physical limitations.  Tr. 356-63.  Thus, the record does not reflect the ME's testimony contradicts the observations of the lay witnesses as to Randall's physical limitations.

The ALJ also referred to Randall's criminal record and his "tendency to exaggerate" his symptoms as reasons to disregard the lay-witness testimony.  The Court already has rejected reliance on Randall's criminal history because it is not a part of the record.  The Court also has found the record does not support a finding that Randall tends to exaggerate his physical limitations.

In addition, the ALJ noted the lay witnesses "appear to ignore the claimant's drug and alcohol abuse."  Tr. 23.  The ALJ may find a claimant is not disabled if drug and alcohol abuse is a contributing factor material to the determination of disability.  42 U.S.C. § 1382c(a)(3)(J).  *See also Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001).  Drug or alcohol addiction are "contributing material factors" when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol.  20 C.F.R. § 416.935(b).  Here

the ALJ did not make such a finding nor did the ALJ establish the lay witnesses knew about Randall's substance dependence to support a conclusion that they "ignore[d]" that fact when they testified.  Although the record reflects Randall struggled with drug and alcohol dependence, Randall testified he had not used drugs or alcohol for almost six months prior to the hearing and that he had been attending drug and alcohol counseling consistently.  Tr. 268, 286, 331.

Accordingly, the Court finds the ALJ erred when he rejected the testimony of lay witnesses Nancy Randall, Russell Randall, and Robert McLatchey without providing legally sufficient reasons supported by the record for doing so.  *See Lewis*, 236 F.3d at 511.

## II.  Crediting the Testimony of Randall and of Lay Witnesses

As noted, the ALJ did not give legally sufficient reasons supported by substantial evidence in the record for rejecting Randall's testimony nor for discrediting the testimony of Nancy Randall, Russell Randall, or Robert McLatchey.  The failure of the ALJ to evaluate lay testimony properly is not harmless error unless the reviewing court can conclude "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

Randall's attorney examined the VE at the hearing regarding Randall's ability to perform work-related activities based on the

22  -  OPINION AND ORDER

functional limitations identified in the testimony of Randall and the other lay witnesses.  Tr. 368-70.  In a hypothetical posed to the VE, Randall's attorney added those functional limitations to the limitations included in the ALJ's RFC assessment, including Randall's inability to walk more than two blocks without rest, his occasional inability to grip objects, his lack of stamina and persistent fatigue, his daily problems with irritability, his occasional memory loss, and his occasional panic attacks. Tr. 368-69.  The VE responded a person with such limitations could not sustain competitive employment "for multiple reasons." Tr. 369.  As an alternative hypothetical, Randall's counsel added the following limitations:  unpredictable headaches that require rest to recover and the daily requirement of at least one-and-a-half hours in the restroom.  Tr. 369.  The VE responded again that a person with such limitations could not sustain competitive employment "for multiple reasons."  Tr. 369-70.  The ALJ also asked the VE whether one or two days absence from work each week (consistent with Randall's testimony) would affect Randall's ability to sustain employment, and the VE responded Randall would likely lose his job in 30 to 60 days.  Tr. 368.

Thus, in light of the testimony of the VE, the Court concludes a "reasonable ALJ" could find Randall disabled on the basis of the testimony of these lay witnesses.  *See Stout*, 454 F.3d at 1056.  The ALJ's improper discrediting of the lay-

23  -  OPINION AND ORDER

witnesses' testimony, therefore, is not harmless error. Moreover, the Court finds the ALJ would have been required, based on the testimony of the VE, to find Randall disabled if he had credited Randall's testimony regarding his functional limitations. *See Lester*, 81 F.3d at 834.

On this record, the Court credits the testimony of Randall as a matter of law and credits the lay testimony of Nancy Randall, Russell Randall, and Robert McLatchey. Accordingly, the Court concludes Randall is disabled on the basis of the credited testimony. Thus, the Court need not address Randall's remaining points of error.

## REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

In the Ninth Circuit, "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant is disabled if he had credited the claimant's testimony, we remand for calculation of benefits." *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007)(internal quotation omitted).

As noted, here the Court finds on the basis of the credited testimony, the testimony of the VE, and the record as a whole,

24  -  OPINION AND ORDER

the ALJ would be required to find Randall is disabled within the meaning of the Social Security Act.  Thus, further proceedings would serve no useful purpose, and the Court remands for calculation and award of benefits.

## <u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 23rd day of January, 2008.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge